Rennae SIMS and Rebecca Sims *v.* FIRST STATE BANK of PLAINVIEW

CA 00-673                                           43 S.W.3d 175

Court of Appeals of Arkansas
Division II
Opinion delivered April 25, 2001

*Mobley Law Firm*, by: *Jeff Mobley*, for appellants.

*Terry Sullivan*, for appellee.

L ARRY D. VAUGHT, Judge. This is an appeal from an order of the Yell County Circuit Court interpreting and enforcing an earlier order of replevin and finding appellants Rennae Sims and Rebecca Sims in contempt of court. In 1994, Mr. Sims sold a John Deere tractor, a backhoe, and a front-end loader to William Foster, who gave him a promissory note and security interest in the equipment. Mr. Sims, however, did not file a financing statement covering the equipment. Mr. Foster later gave appellee First State Bank of Plainview a security interest in a "JOHN DEERE MODEL 750 BACKHOE SR#CHO750SO28578,"along with all accessions and additions, as collateral for a loan. The financing statement, which was filed in February 1995, listed the property as "JOHN DEERE MODEL 750 BACKHOE SR#CHO750SO28

578," and included all "accessions, accessories, additions, amendments, attachments, [and] modifications ...." Mr. Foster pledged the same equipment as collateral for another loan with appellee in 1996. After Mr. Foster defaulted on his debt to appellee, appellee filed a foreclosure suit against him on December 9, 1998. In February 1999, Mr. Sims notified Mr. Foster that he was in default on his debt to him; the next month, Mr. Foster allowed Mr. Sims to repossess the equipment. In April 1999, appellee obtained a foreclosure decree ordering the property sold; appellee purchased it at the sale held in July 1999. Mr. Sims, however, sold this equipment to James Hasty in August 1999.

In October 1999, appellee filed suit against appellants and Mr. Hasty for possession of the equipment. Appellants filed an objection to the issuance of an order of delivery, stating that they were the lawful owners of the tractor and the other equipment, and attached copies of the promissory note and security agreement signed by Mr. Foster. Appellants also filed an answer and a counterclaim asserting ownership of the equipment with attached copies of Mr. Sims's letter informing Mr. Foster that he was delinquent on his account, Mr. Hasty's promissory note, and Mr. Hasty's checks given in partial payment of his obligation to appellants. In response to appellants' counterclaim, appellee stated that it was obvious from the pleadings that appellants had failed to file the security agreement Mr. Foster had given them, and therefore, their security interest was unperfected and subordinate to appellee's security interest in the equipment. On November 10, 1999, appellee filed a motion for judgment on the pleadings.

On November 23, 1999, the circuit judge entered an order finding that appellee had a valid financing statement and security agreement covering the following property: "John Deere Tractor, serial number CHO750SO28578, with attached backhoe." He also found that appellee's interest in the property took priority over appellants' unrecorded and unperfected security interest. The circuit judge granted appellee's motion for judgment on the pleadings, declaring appellee the owner of the property and granting it an immediate order of possession.

Appellee filed a motion for contempt and other relief on December 1, 1999, asserting that, after the entry of the replevin order, appellee hired a truck and driver to remove the equipment from appellants' premises; however, upon arrival, appellee discovered that appellants had detached the front-end loader from the tractor. Appellee alleged that the front-end loader had previously

been attached to the tractor at all times and was an integral part of it, stating, "the backhoe in question is a totally useless piece of equipment without the front-end loader which has been removed ...." Appellee requested that appellants be ordered to release the front-end loader to appellee and that they be held in contempt. In response, appellants asserted that the tractor, backhoe, and front-end loader were three separate pieces of equipment and that appellee did not have a lien on the front-end loader because it had not been specifically mentioned in appellee's financing documents.

On December 16, 1999, appellee filed an amended complaint for replevin of the front-end loader, which it described as an "accessory" and "part and parcel of the backhoe ...." On January 24, 2000, appellants filed a response to appellee's amended complaint, an amended counterclaim, and a motion to set aside the November 1999 order on the ground that appellee's financing statement contained an inadequate description of the equipment. According to appellants, this description was so inadequate that it rendered all of appellee's financing documents ineffective to create any lien on the equipment. Therefore, appellants argued, their own security interest in the equipment, which was specifically described, took priority, even though it was unrecorded. In response, appellee asserted the defense of *res judicata* because appellants had failed to appeal from the November 1999 order finding it to have a valid security interest that took priority over appellants' interest in the equipment. Appellants replied that the circuit court could set aside the November 1999 order within ninety days by reason of a mistake or newly discovered evidence.

The circuit judge held a hearing on March 30, 2000, at which he took testimony about the nature of the front-end loader and heard the arguments of counsel. Gary Boland, an assistant vice-president of appellee, testified that, when appellee attempted to replevy the equipment, it was broken apart; the front-end loader was in five or six pieces; and the backhoe could not be reattached to the tractor without using a bracket that went with the front-end loader. On the first trip, he said, only the tractor was recovered; appellee later recovered the backhoe by hiring someone with a tractor and front-end loader. Mr. Boland said that the backhoe is not useable without the front-end loader. He also stated that, when appellee's employees viewed the equipment at Mr. Hasty's premises before appellee filed the replevin action, the front-end loader was attached to the tractor.

Clark Haynes, the manager of a John Deere dealership, testified that the backhoe will not work without the front-end loader. Mr. Foster stated that the entire time he owned the equipment, he never detached the front-end loader from the tractor, and affirmed that the backhoe is not useable without the front-end loader. Mr. Hasty also testified that the front-end loader was attached to the tractor when he first viewed the equipment at Mr. Foster's premises and when he took it home. He said that he also never detached it from the tractor.

In his order dated April 13, 2000, the circuit judge found that the front-end loader was attached at all times to the tractor and that the tractor, backhoe and front-end loader were included within appellee's security agreements, which covered "all accessories, additions, [and] attachments ...." to the collateral. He further found that the front-end loader was "part and parcel of the equipment that should have been replevied" by appellee. He ordered appellants to reassemble and reattach the front-end loader to the tractor within thirty days and found appellants in contempt for removing it from the tractor. He gave appellee judgment for $200 for its expenses in attempting to recover the front-end loader, as well as its related attorney's fees.

■■ In their first point on appeal, appellants contend that the circuit judge erred in finding that appellee's security interest had priority over appellants' interest and, therefore, he should not have granted judgment on the pleadings to appellee. Appellants also assert that, because of their contract with Mr. Foster, they were the rightful owners of the property. They further contend that this issue is outside the terms of the Uniform Commercial Code's provisions regarding the priority of security interests. Appellants, however, conceded the validity of appellee's security interest in the equipment before the earlier order was entered. They did not make these arguments to the circuit judge before he entered the November 1999 order of replevin, nor did they file an appeal from that order. Therefore, they are now in no position to complain about the validity of appellee's security interest in, or right to possess, the equipment. When a judgment becomes final, it is protected by the common law principle of *res judicata*, and the findings and orders of the decree cannot later be collaterally attacked, even if they are erroneous. *Ford v. Ford*, 30 Ark. App. 147, 783 S.W.2d 879 (1990). *See also Knox v. Knox*, 25 Ark. App. 107, 753 S.W.2d 290 (1988).

*Clarification of the November 1999 Order*

Appellants next argue at length that the circuit judge erred in denying their January 24, 2000, motion to set aside the November 1999 replevin order because appellee's financing statements contained such inadequate descriptions of the equipment as to render them unenforceable. According to appellants, the circuit court had jurisdiction under Arkansas Rule of Civil Procedure 60(b) to set the previous order aside. Appellants also claim that the financing documents' inadequate description of the collateral amounted to newly discovered evidence. We disagree.

█ █ Rule 60(b), as it stood at the time appellants filed their motion, provided that, to correct any error or mistake, or to prevent the miscarriage of justice, a court could modify an order within ninety days of its filing. (Rule 60 was amended by *In Re: Arkansas Rules of Civil Procedure*, 340 Ark. 738 (January 27, 2000).) The only exceptions to the ninety-day limit in Rule 60(b) were set out in subsections (a) and (c). Provision (a) stated that, after the ninety-day deadline, a court only had jurisdiction to correct clerical errors.[1] Rule 60(c) enumerated seven different grounds by which a court could set aside or modify a judgment. It provided that, after ninety days, a new trial could be granted on the basis of newly discovered evidence which the moving party could not have discovered in time to file a motion under Rule 59. It is settled law that a new trial based on newly discovered evidence is not a favored remedy, and whether to grant a motion for new trial on such grounds is within the sound discretion of the trial judge. *Lee v. Lee*, 330 Ark. 310, 954 S.W.2d 231 (1997). In a hearing on a motion for new trial based on newly discovered evidence, the burden is on the movant to establish that he could not with reasonable diligence have discovered and produced the evidence at the time of trial. *Id.*

Appellants, however, did not establish that they could not, with due diligence, have discovered this matter before entry of the judgment on the pleadings. Appellants' attorney admitted that, before entry of the November 1999 order, he had overlooked what he later thought was a problem with the description of the collateral in

---

[1] Although appellants filed their motion to set aside the November 23, 1999, order within ninety days, the hearing on that motion was not held until March 30, 2000, and the resulting order was entered on April 13, 2000. Both events occurred outside Rule 60(b)'s ninety-day limit. Because the relief sought by appellants was far more substantive than the correction of a clerical error, appellants' only possible means of setting aside the judgment was Rule 60(c).

appellee's financing documents. He said that, only later, after discussing the matter with people in the farming industry, did he believe there was a problem with the description.

■ ■ After ninety days, without the showing of one of the exceptions listed in Rule 60, a court has no power to modify or set aside an order. *See Blackwood v. Floyd,* 342 Ark. 498, 29 S.W.3d 694 (2000). A court can only correct the record to make it conform to action that was actually taken; a decree cannot be modified to provide action that the court, in retrospect, should have taken but which it in fact did not take. *Holt v. Holt,* 70 Ark. App. 43, 14 S.W.3d 887 (2000). *Accord Taylor v. Zanone Props.,* 342 Ark. 465, 30 S.W.2d 74 (2000). However, a court does have the power to correct a decree to more accurately reflect its original ruling. *Ford v. Ford, supra.* We have long recognized the inherent power of the courts to enter orders correcting their judgments where necessary to make them speak the truth and reflect actions accurately. *Id. Accord McGibbony v. McGibbony,* 12 Ark. App. 141, 671 S.W.2d 212 (1984).

■ Therefore, when the circuit judge entered his order of April 13, 2000, finding the front-end loader to be a part of the tractor for which replevin had been ordered in November 1999, the circuit court had no jurisdiction to revisit the issue of the validity of appellee's financing documents. That court did, however, have jurisdiction to interpret its November 1999 order as including the front-end loader and to enforce that order, which is precisely what it did in April 2000. At the March 30, 2000, hearing, the circuit judge stressed that the controlling issue was whether the front-end loader was a part of the tractor. He heard extensive testimony demonstrating that, at all relevant times, the front-end loader was in fact attached to, and an integral part of, the tractor. We will not reverse his finding of fact to that effect unless it is clearly against a preponderance of the evidence. *Fulkerson v. Van Buren,* 60 Ark. App. 257, 961 S.W.2d 780 (1998). Because the circuit judge did not err in denying appellants' motion, we must also reject appellants' argument that, under Arkansas Rule of Civil Procedure 61, their rights were adversely affected in a manner inconsistent with substantial justice.

## Contempt

■ Appellants also argue that the circuit judge erred in finding them in contempt of court. In cases of civil contempt, the objective is the enforcement of the rights of private parties to litigation.

*Wakefield v. Wakefield,* 64 Ark. App. 147, 984 S.W.2d 32 (1998). Punishment for civil contempt will be upheld by this court unless the trial court's order is arbitrary or against the weight of the evidence. *Id.*

■ ■ Appellants point out that the November 1999 order did not expressly refer to the front-end loader, nor did appellee's financing documents. Before a person may be held in contempt for violation of a judge's order, the order alleged to be violated must be definite in its terms as to the duties imposed and the command must be express rather than implied. *Johnson v. Johnson,* 343 Ark. 186, 33 S.W.3d 492 (2000). When a party does all that is expressly required of him, it is error to hold him in contempt. *Id.* Although appellee proved that the front-end loader was within the terms of the financing documents, it was not expressly mentioned in the November 1999 order. Therefore, we hold that it was error to find appellants in contempt for not delivering the front-end loader after entry of the November 1999 order. However, we affirm that part of the circuit judge's order directing appellants to reassemble the front-end loader and to deliver it to appellee within thirty days.

Affirmed in part; reversed and remanded in part.

ROBBINS and CRABTREE, JJ., agree.